[ECF No. 30]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| VAN HUNTER,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>MATTHEW SCHULLERY, et al.,<br><br>　　　　　　　　Defendants. | Civil No. 24-2139 (KMW)(EAP) |

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Van Hunter's Motion for Leave to File a Third Amended Complaint, *see* ECF No. 30, which attempts to re-plead his previously dismissed Eighth Amendment deliberate indifference claim, filed pursuant to 42 U.S.C. § 1983, against Defendant Fathom Borg. Defendant Borg has opposed the Motion, *see* ECF No. 33, and Plaintiff filed a reply brief, *see* ECF No. 34. The Court has considered the parties' submissions and decides this matter without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and L. Civ. R. 78.1. For the following reasons, the Motion is **DENIED WITHOUT PREJUDICE**.

### I.　　　FACTUAL BACKGROUND

**A.　　Procedural History**

On January 29, 2024, Plaintiff filed a complaint in the New Jersey Superior Court setting forth claims, pursuant to 42 U.S.C. § 1983, against Defendants Matthew Schullery, Fathom Borg, Stephanie Bailey, Susan Garrett, Tiffany Fairweather, Kyle Yaindl, Linda Linen, State of New Jersey Department of Corrections, and John/Jane Does 1-20, arising out of events during his state incarceration. *See* ECF No. 1-1, Complaint. Defendant Fathom Borg—the only Defendant

served—removed the case to federal court pursuant to 28 U.S.C. § 1331. *See* ECF No. 1, Notice of Removal, ¶¶ 4, 6.

On May 2, 2024, after Defendant Borg moved to dismiss, *see* ECF No. 6, Plaintiff filed an amended complaint against the same Defendants, except for the State of New Jersey Department of Corrections and the Doe Defendants, *see* ECF No. 9. Borg withdrew her motion to dismiss the complaint and filed a motion to dismiss the amended complaint. *See* ECF Nos. 12, 13.

On June 21, 2024, Plaintiff filed a second amended complaint against the same Defendants. *See* ECF No. 18. Borg's pending motion to dismiss the amended complaint was dismissed as moot, *see* ECF No. 21, and on July 26, 2024, Borg filed a motion to dismiss the second amended complaint, *see* ECF No. 24. The Court granted that motion and dismissed all claims against Borg without prejudice. *See* ECF No. 28, Memorandum Order.

On September 27, 2024, Plaintiff filed the current Motion for Leave to File Third Amended Complaint, *see* ECF No. 30 (Pl.'s Mot.). Borg filed opposition on October 21, 2024, *see* ECF No. 33 (Def.'s Br.), and Plaintiff filed a reply on October 24, 2024, ECF No. 24 (Pl.'s Reply). This matter is now ripe for disposition.

**B.** **Facts Alleged in the Proposed Third Amended Complaint**

According to the proposed Third Amended Complaint ("Proposed TAC"), in 2021, Plaintiff was incarcerated at the Northern State Prison in Newark, New Jersey. ECF No. 30-3, Proposed TAC ¶ 18. On August 26, 2021, Plaintiff was transferred from Northern State Prison's general population to its restricted housing unit ("RHU"), for an alleged prison infraction. *Id.* ¶ 21. Plaintiff complained that prison administration had failed to transfer his property—consisting of a television, fan, storage bin, food, and other things—to the RHU. *Id.* ¶ 22. In late December 2021, Plaintiff alleges that Lieutenant Hassan told him that a "committee" would be meeting in

2

January to decide Plaintiff's missing property claim. *Id.* ¶ 24. On January 19, 2022, Plaintiff received the committee's written, adverse decision on his claim. *Id.* ¶ 25. Plaintiff disagreed with the decision and believed many of the committee's stated reasons were "blatant lies." *Id.* ¶¶ 26-27. Plaintiff allegedly spoke with Lieutenant Hassan about the decision, and Lieutenant Hassan told Plaintiff that there was no appeal procedure. *Id.* ¶¶ 28-29. Plaintiff then filed an additional grievance on Northern State Prison administration. *Id.* ¶ 31. That grievance was "met with an unsympathetic response." *Id.* ¶ 32.

The Proposed TAC asserts that, on February 2, 2022, Defendant Fathom Borg, an assistant commissioner of the State of New Jersey Department of Corrections, "appeared at Plaintiff's cell door." *Id.* ¶¶ 3, 33, 34. According to Plaintiff, Borg directed Plaintiff to "not to drop threatening messages on the JPAY."[1] *Id.* ¶ 36. Plaintiff contested Borg's characterization of his JPay messages and stated that he was simply advocating his position on the committee's unfair treatment of his missing property claim. *Id.* ¶¶ 38-39. After Plaintiff explained the basis for his belief that the committee's decision was wrong, Borg purportedly told Plaintiff that if he had put his claim in the right way, she would have approved the return of his property. *Id.* ¶¶ 40-41. Plaintiff further alleges that Borg told him that he had put in his claim "too late." *Id.* ¶ 43. According to the Proposed TAC, when Plaintiff disputed Borg's statements, "Borg's demeanor changed to one of anger," and she walked away from Plaintiff's cell. *Id.* ¶¶ 42, 44–47. As Borg was walking away, Plaintiff alleges that he "spoke certain profane words" to her and "cursed her out[.]" *Id.* ¶¶ 49-51.

---

[1] "JPay is a self-help kiosk system where incarcerated individuals can access their funds, download digital books, programming, music, access stamps, send and receive electronic correspondence . . . ." https://www.nj.gov/corrections/pages/StayingConnected.html, available at https://perma.cc/7NMQ-23QV (last visited Apr. 22, 2025).

Subsequently, Plaintiff alleges that "[a] charge was directed" at him for threatening Borg. *Id.* ¶ 56. On February 4, 2022, an officer conducted a hearing on the charge—at which Plaintiff was not present—and found Plaintiff innocent of threatening Borg but guilty of using abusive language. *Id.* ¶¶ 59-61. Plaintiff received a thirty-day loss of recreational privileges ("LORP") but was not penalized with additional time in the RHU. *Id.* ¶¶ 62-65.

On February 3, 2022, Plaintiff was transferred to South Woods State Prison in Bridgeton, New Jersey. *Id.* ¶ 57. Upon his arrival, Plaintiff was housed in general population. *Id.* ¶ 66-67.[2] On February 7, 2022, Borg allegedly learned that Plaintiff was in general population rather than the restricted housing unit ("RHU"). *Id.* ¶ 68. Plaintiff asserts that Borg was familiar with the conditions in the RHU, which included daily out-of-cell recreation limited to a steel cage, showers every other day, inmates being shackled whenever they left their cells, meals and medication being provided through a slot in the cell door, a sliver of glass as a window, fifteen minutes daily of phone usage, no books and only $40 worth of commissary access each month, freezing cold conditions without appropriate protective gear, broken JPay kiosks, and no law library access. *Id.* ¶¶ 14-15, 70-83. Plaintiff claims that Borg ordered Plaintiff transferred from general population to the RHU at South Woods State Prison. *Id.* ¶¶ 84, 86.

Plaintiff contends that he remained in the RHU for approximately two months, during which he served time in isolation. *Id.* ¶¶ 11-13, 87-88. He believes that his transfer to RHU was "retaliation" by Borg for his protected speech on February 2, 2022. *Id.* ¶ 90.

---

[2] Plaintiff's Proposed TAC is somewhat contradictory on this point. In paragraph 58, Plaintiff suggests that, upon arrival at South Woods, he was housed in the restricted housing unit. In paragraphs 66 to 68, however, he asserts that he was originally housed in general population and then transferred to the restricted housing unit. It appears that paragraph 58 is inadvertently incorrect, but for purposes of this motion, the discrepancy does not bear on the ultimate resolution.

The Proposed TAC asserts that, on February 11, 2022, Defendant Matthew Schullery, a prison employee, became aware of the freezing cold conditions in the RHU but ignored them. *Id.* ¶¶ 2, 16-17. Plaintiff continues that on March 8, 2022, Defendants Stephanie Bailey and Susan Garrett, both employees of the State of New Jersey Department of Corrections, became aware of and ignored the circumstances under which Plaintiff was being held in the RHU. *Id.* ¶¶ 4-5, 93-96. Finally, the Proposed TAC states that on various dates from the middle of March 2022 to the end of April 2022, Defendants Tiffany Fairweather, Kyle Yaindl, and Linda Linen, also employees of the State of New Jersey Department of Corrections, became aware of the circumstances under which Plaintiff was held in the RHU but ignored Plaintiff's complaints. *Id.* ¶¶ 6-8, 97-102.

Plaintiff's Proposed TAC sets forth the following claims: (1) cruel and unusual punishment for conditions of confinement, pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), against Defendant Matthew Schullery (Count I), *id.* ¶¶ 104-107; (2) deliberate indifference to health or safety constituting cruel and unusual punishment, pursuant to 42 U.S.C. § 1983 and the NJCRA, against Defendant Fathom Borg (Count III), *id.* ¶ 108-109; and (3) deliberate indifference to health or safety constituting cruel and unusual punishment, pursuant to 42 U.S.C. § 1983 and the NJCRA, against Defendants Bailey, Garrett, Fairweather, Yaindl, and Linen (Count IV), *id.* ¶¶ 110-111.[3] For purposes of this Motion, the only claim at issue is Count III against Borg.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) governs amendments to pleadings before trial. A party may amend its pleading once as a matter of course within either twenty-one days after serving it; or if the pleading is one to which a responsive pleading is required, the earlier of twenty-one

---

[3] The Proposed TAC contains no Count II.

days after service of a responsive pleading or twenty-one days after a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). If those deadlines have expired, a party may amend its pleading only with the opposing party's written consent or the court's leave. Fed. R. Civ. 15(a)(2). "The court should freely give leave when justice so requires." *Id*.

The Third Circuit has adopted a liberal approach to the amendment of pleadings. *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019); *see also Donovan v. W. R. Berkley Corp.*, 566 F. Supp. 3d 224, 229 (D.N.J. 2021) ("Generally, there is a presumption in allowing the moving party to amend its pleadings."). However, the Court may deny a motion for leave to amend in one of four instances: (1) the amendment would be futile; (2) the moving party has demonstrated undue delay, bad faith, or dilatory motives; (3) the amendment would prejudice the non-moving party; or (4) the moving party was put on notice of deficiencies in its pleading but chose not to resolve them. *U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). Ultimately, the decision of whether to grant leave to amend lies within the sound discretion of the Court. *Arab Afr. Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993).

Here, Defendant Borg opposes the filing of Plaintiff's Proposed Third Amended Complaint on grounds of futility. "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Accordingly, the futility of an amended complaint is governed by the same standards of legal sufficiency as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010). Under these standards, a court must accept all factual allegations in a proposed amended complaint as true and view them in the light most favorable to the plaintiff. *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Moreover, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

### III.  DISCUSSION

In his Second Amended Complaint, Plaintiff asserted claims against Defendant Borg for both First Amendment retaliation and violation of the Eighth Amendment prohibition against cruel and unusual punishment. ECF No. 18, Second Amended Complaint ¶¶ 93-103. The Eighth Amendment claim specifically alleged that Defendant Borg's detention of Plaintiff in the RHU constituted cruel and unusual punishment. *Id.* ¶¶ 102-03.

On September 9, 2024, the Court dismissed all claims against Defendant Borg without prejudice. ECF No. 28, September 9, 2024 Memorandum Order. As to the Eighth Amendment claim, the Court reasoned:

> Plaintiff's claim is essentially that he was held for two months in punitive housing without a disciplinary finding and that he believes this violates the Eighth Amendment. The Supreme Court has rejected similar claims, finding that a placement in punitive detention, up to and including solitary confinement, for a month without a disciplinary hearing did not even impugn Due Process protections, let alone the Eighth Amendment's prohibition on cruel and unusual punishment. *See Sandin v. Connor*, 515 U.S. 472, 486 (1995). While the Third Circuit has found a liberty interest for [a] prisoner[] who spent extended periods in punitive confinement without a hearing, *see Shoats v. Horn*, 213 F.3d 140, 144-45 (3d Cir. 2000) (eight years in solitary without hearings impugns liberty

7

> interest), the Third Circuit has never held that a stay as short as two months, only thirty days longer than that at issue in *Sandin* is sufficient to trigger a liberty interest requiring a hearing, let alone that it would violate the Eighth Amendment. *See, e.g., Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 444 (3d Cir. 2020) (noting that the 3d Circuit had previously found even a four-year period of solitary confinement did not violate the Eighth Amendment). As Plaintiff does not attempt to actually plead a Due Process claim, and as he has not shown that he was held in prison beyond the time permitted by his supporting conviction, and because a two month stay in punitive housing is insufficient to state a claim for a violation of the Eighth Amendment, Plaintiff's over detention claim must be dismissed without prejudice for failure to state a claim upon which relief may be granted.

*Id.* at 4.

Plaintiff's Proposed TAC now attempts to replead his Eighth Amendment claim against Defendant Borg by supplementing it with additional allegations. The Proposed TAC asserts that Plaintiff's two-month stay in the RHU constituted cruel and unusual punishment because RHU inmates were subjected to additional restrictions, including limited out-of-cell recreation in a steel cage, showers only every other day, shackling whenever the inmates left their cells, meals and medication provided through a slot in the cell door, slivers of glass for windows, a fifteen-minute limitation on daily phone time, no books, only $40 worth of monthly commissary access, freezing cold conditions, no working JPay kiosks, and no law library access. Proposed TAC ¶¶ 70-83. The Proposed TAC further argues that Borg was familiar with the conditions in the RHU, gave the order for Plaintiff to be transferred to the RHU without penological basis, and was motivated by retaliation. *Id.* ¶ 69, 84, 89-90.

Opposing Plaintiff's requested leave to amend, Defendant Borg argues that these allegations are insufficient to allege an Eighth Amendment deliberate indifference claim. Def.'s Br. at 6-10. Defendant also asserts that, even if the claim were properly pled, she is entitled to qualified immunity, rendering any amendment futile. *Id.* at 10-14. As Plaintiff has failed to

8

adequately plead an Eighth Amendment deliberate indifference claim, the Court focuses on that argument and declines to address qualified immunity.

"The Eighth Amendment 'prohibits any punishment which violates civilized standards and concepts of humanity and decency.'" *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992)). This Amendment "impose[s] affirmative duties on prison officials 'to provide humane conditions of confinement.'" *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the United States Supreme Court added a subjective component to the Eighth Amendment analysis. The Court recognized that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]" *Id.* at 837. It reasoned that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Thus, "[t]o sufficiently allege prison officials violated [a prisoner's] Eighth Amendment rights by imposing inhumane conditions, [a] complaint ha[s] to allege facts showing (1) the deprivation [the prisoner] endured was 'sufficiently serious,' and (2) the prison officials had 'a sufficiently culpable state of mind.'" *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022) (quoting *Thomas*, 948 F.3d at 138). Both elements are in dispute here.

A.  **Sufficiently Serious Deprivation**

The first element of an Eighth Amendment deliberate indifference claim "is adequately pled when the allegations depict conditions where the inmate is denied 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)). "The

9

benchmark for alleging such deprivation is not that the inmate was merely uncomfortable; he or she must show they are 'incarcerated under conditions posing a substantial risk of serious harm.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). This standard is less demanding than alleging conditions posing "'a probable risk of harm.'" *Id.* (quoting *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 227 (3d Cir. 2015)).

"'Conditions . . . alone or in combination [] may deprive inmates of the minimal civilized measure of life's necessities.'" *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Some conditions of confinement may violate the Constitution "'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Id.* at 373-74 (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). For example, where inmates face a low cell temperature at night along with a failure to issue blankets, they may be deprived of the human need for sleep. *Wilson*, 501 U.S. at 304.

Nonetheless, it remains well established that prison conditions may be harsh and uncomfortable without violating the constitutional minimums. *Farmer*, 511 U.S. at 833-34. "[B]y virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted." *McKune v. Lile*, 536 U.S. 24, 40 (2002). Thus, the prisoner plaintiff bears the burden of proving that the challenged condition is "extreme" and "pose[s] an unreasonable risk of serious damage to [the prisoner's] future health' or safety." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotation marks and citations omitted). Stated differently, "'[a] plaintiff must show that the conditions to which he is exposed pose a risk of serious harm to the prisoner; a risk so serious that society is unwilling to tolerate it.'" *Williams v. Russell,* No. 20-3511, 2024 WL 2188914, at *12 (E.D. Pa. May 15, 2024) (quoting *Rambert v.*

10

*Horn*, No. 96-2875, 1996 WL 583155, at *2 (E.D. Pa. Oct. 11, 1996)).

The conditions alleged by Plaintiff in his Proposed TAC do not rise to the level of a constitutional violation. To the extent Plaintiff generally challenges his incarceration in the RHU, it is well established an inmate's incarceration in solitary confinement or restrictive housing does not, in and of itself, violate the Eighth Amendment "where his basic needs for nutrition and shelter were being met." *Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) (citing *Gibson v. Lynch*, 652 F.2d 348, 350, 352 (3d Cir. 1981)); *see also Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (finding that plaintiff's "prolonged administrative segregation," without a deprivation of life's necessities, did not violate the Eighth Amendment.); *Talbert v. Shapiro*, No. 23-2262, 2023 WL 4564778, at *6 (E.D. Pa. July 14, 2023) ("Detention in a restrictive housing unit, without more, generally is insufficient to establish an Eighth Amendment violation." (cleaned up)).

To the extent Plaintiff challenges specific conditions of confinement within the RHU, none of them rise to the level of an Eighth Amendment violation:

- Plaintiff's allegations that he was fed meals and medication through a slot in the door does not allege a deprivation of the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. Whether the deprivation of food violations constitutional protections "depends on the amount and duration of the deprivation." *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) (quotation omitted). "While a total deprivation of meals raises an Eighth Amendment claim," *Glenn v. McLain*, No. 23-209, 2024 WL 4350272, at *10 (W.D. Pa. Sept. 30, 2024), Plaintiff admits that he received meals, albeit in his cell.

- As to Plaintiff's claims of infrequent showers in restrictive custody, the Eighth Amendment does not require that prisoners be afforded frequent or comfortable showers. *DiFilippo v. Vaughn*, No. 95-909, 1996 WL 355336, at *5 (E.D. Pa. June 24, 1996); *see also Devon v. Warden SCI-Mahanoy*, No. 08-1448, 2008 WL 3890161, at *4 (M.D. Pa. Aug. 19, 2008) (holding that thirteen and a half days without shower, shave, or recreation did not violate the Eighth Amendment).

- As to Plaintiff's claim that he was given out-of-cell recreation only in a steel cage, instead of the general yard, courts have found that although the near-total deprivation of the opportunity to exercise may violate the Eighth Amendment, temporary denial of out-of-cell exercise does not violate the Constitution. *Barndt*

11

*v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (deprivation of out-of-cell exercise for twenty-eight days was not a deprivation). Courts should consider "the length of the deprivation, the availability of recreation within the cell, and whether the inmate suffered any ill health effects as a result of the deprivation." *Id.* (citations omitted). Here, Plaintiff admits that he was given out-of-cell recreation, albeit in a steel cage. This condition does not violate the Eighth Amendment.

- With respect to his claim of limited phone access, "prisoners 'ha[ve] no right to unlimited telephone use,' and reasonable restrictions on telephone privileges do not violate their [constitutional] rights." *Almahdi v. Ashcroft*, 310 F. App'x 519, 521-22 (3d Cir. 2009) (quotations omitted).

- As to any deprivation of access to the law library, a claim that prison officials have denied an inmate access to the law library does not constitute an Eighth Amendment claim, but rather a First or Fourteenth Amendment access to courts claim. *Frazier v. Daniels*, 2010 WL 2040763, at *12 & n.12 (E.D. Pa. May 20, 2010) (citations omitted). Moreover, any claim based on denial of access to a prison law library must be accompanied by "some actual injury." *Id.* Plaintiff has alleged no such injury.

- Plaintiff's claim that he was shackled whenever out of cell while in the RHU also does not violate the Eighth Amendment. *See Conklin v. Doe*, No. 24-189, 2024 WL 4544776, at *3-4 (M.D. Pa. Oct. 22, 2024) (finding that policy of keeping RHU inmates restrained is not a *per se* constitutional violation); *Platt v. Brockenborough*, 476 F. Supp. 2d 467, 471 (E.D. Pa. 2007) (noting that the use of shackles *per se* does not violate the Eighth Amendment).

- With respect to the allegedly cold conditions in the RHU, the Third Circuit has held, in several unpublished opinions, that an inmate's exposure to cold conditions does not, absent more, violate the Eighth Amendment. *See Burkholder v. Newton*, 116 F. App'x 358, 363 (3d Cir. 2004) (denying a conditions of confinement claim based on exposure to cold temperatures and an unsanitary toilet for thirty days); *Bracey v. Sec'y Pa. Dept. of Corrs.*, 686 F. App'x 130, 136 (3d Cir. 2017) (holding that allegedly cold conditions in cell did not violate the Eighth Amendment, absent showing that conditions were extreme).

- Finally, as to Plaintiff's claim that he was not provided with books, was allowed only $40 worth of monthly commissary access, did not have working JPay kiosks, and had only a sliver of glass for a window, "[t]he loss of such minor privileges simply does not rise to the level of a sufficiently serious deprivation of life's necessities." *Bacon v. Luzerne Cnty.*, No. 23-1699, 2024 WL 1837217, at *4 (M.D. Pa. 2024) (citing *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (no Eighth Amendment violation where plaintiff's confinement in administrative custody did not involve "a deprivation of any basic human need.")).

Indeed, courts considering similar allegations collectively have declined to find an Eighth Amendment violation. *See, e.g., Glenn v. McLain*, No. 23-209, 2024 WL 4350272, at *10 (W.D. Pa. Sept. 30, 2024) (denying Eighth Amendment claim based on conditions in RHU, including temporary loss of outdoor exercise time, temporary denial of a mattress, temporary denial of a shower, restricted meal items, and lack of access to personal property); *Smith v. McGinley*, No. 22-1382, 2024 WL 275041, at *6 (M.D. Pa. May 28, 2024) (finding placement in RHU resulting in inability to use the telephone, denial of mailing envelopes, temporary placement in a cell with no hot water for three days, inability to use cleaning products, and inability to purchase items from the commissary did not violate Eighth Amendment).

While Plaintiff's conditions in the RHU may have been uncomfortable, Plaintiff has not alleged any facts that would suggest that those conditions rose to the level of "extreme." More pointedly, he has not plausibly alleged that the conditions to which he was exposed posed a risk of serious harm.[4] Accordingly, Plaintiff's allegations in his Proposed TAC fail to meet the first requirement of an Eighth Amendment claim against Defendant Borg.

**B.   Knowledge**

The second, actual knowledge requirement of an Eighth Amendment claim means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. A

---

[4] In support of his claim, Plaintiff cites *Ingalls v. Florio*, 968 F. Supp. 193 (D.N.J. 1997). Pl.'s Reply at 4. In that case, however, the plaintiffs alleged routine housing of five or six inmates in cells designed for only one or two people, continuous sleeping on the floor, lack of toilet paper, food storage and preparation areas infested with vermin causing bacterial contamination of meals, and absence of any outdoor recreation whatsoever for time periods in excess of a year. *Id.* at 198. The court found that the general conditions were "severe enough to constitute possible deprivations of the minimal civilized measure of life's necessities." *Id.* Such conditions are far more extreme than those alleged by Plaintiff here.

prison official, however, cannot avoid liability by ignoring "obvious dangers to inmates." *Id.* at 842. Rather, "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* Stated differently, "[d]eliberate indifference is effectively alleged where an inmate shows officials knew of, but disregarded, that the prison conditions posed 'an excessive risk to inmate health and safety.'" *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022) (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001)).

Here, the Proposed TAC simply alleges that Defendant Borg was familiar with conditions in the RHU; yet, based on retaliatory motives, she gave the order for Plaintiff to be transferred from general population to the RHU at South Woods State Prison. Proposed TAC ¶¶ 69, 84, 90. Nothing in the Proposed TAC, however, allows the inference that Borg knew that Plaintiff faced a substantial risk of serious harm while in the RHU.[5] Nor does the Proposed TAC suggest that

---

[5] Plaintiff cites several cases for the proposition that when a prison official intentionally and without penological basis places a prisoner in a situation where he will suffer harm, the deliberate indifference element is satisfied. Pl.'s Reply at 1-4. Plaintiff's cases, however, are distinguishable on their facts, as the defendants there either were responsible for or knew of a specific risk to the inmate-plaintiffs' safety. *See Clarke*, 55 F.4th at 183 (finding that officials' imposition of solitary confinement for months, despite knowing that the isolation carried a substantial risk of exacerbating plaintiff's mental illness, violated the Eighth Amendment where they kept him in solitary confinement until he suffered serious harm); *Chavarriaga*, 806 F.3d at 229-30 (finding that officer's intentional denial of potable water for three days to inmate evidenced deliberate indifference); *see also Luna v. Davis*, 59 F.4th 713, 717-18 (5th Cir. 2023) (finding potential deliberate indifference where officer transferred plaintiff to certain housing knowing that he faced a substantial risk of being assaulted by inmates who he had previously reported to prison officials); *Thomas v. Tice*, 948 F.3d 133, 138-40 (3d Cir. 2020) (finding genuine issue of material fact as to deliberate indifference where prison officials continued inmate's administrative confinement in "dry cell"—which had no running or standing water—after four days passed and examination of inmate's feces following twelve bowel movements revealed no signs of contraband); *Williams v. Jackson*, 600 F.3d 1007, 1013-14 (8th Cir. 2010) (finding that correction officers were not entitled to qualified immunity from Eighth Amendment claim when officers deliberately removed protective shield from germicidal ultraviolet radiation lamp, thereby exposing plaintiff to ultraviolet radiation, in retaliation for a comment by another inmate, and where officers ignored demands to replace the shield or deactivate the light); *Gulett v. Haines*, 229 F. Supp. 2d 806, 823-24 (S.D. Ohio 2002) (finding genuine issue of material fact as to deliberate indifference where inmate alleged that officer knew that inmate's attacker harbored animus against inmate and was ready to physically assault him, yet officer failed to prevent attacker from

Plaintiff faced any actual excessive risk to his safety. Such bare-boned allegations are insufficient to establish the second element of an Eighth Amendment claim.

## IV. CONCLUSION

For the foregoing reasons and taking all allegations in the light most favorable to Plaintiff, Plaintiff's Proposed TAC against Defendant Borg fails to allege a plausible Eighth Amendment claim. As such, permitting the requested amendment would be futile. Accordingly, Plaintiff's Motion for Leave to Amend is **DENIED WITHOUT PREJUDICE**.

s/Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc: Karen M. Williams, U.S.D.J.

---

accessing inmate's cell during solitary free time).