[ECF No. 39]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| VAN HUNTER,<br><br>   Plaintiff,<br><br>v.<br><br>MATTHEW SCHULLERY, et al.,<br><br>   Defendants. | Civil No. 24-2139 (KMW)(EAP) |

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff Van Hunter's second Motion for Leave to File a Third Amended Complaint. *See* ECF No. 39. Although Plaintiff represents that the Motion is contested, *see id.*, no Defendant has filed opposition. The Court has considered Plaintiff's submission and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and L. Civ. R. 78.1. For the following reasons, the Motion is **DENIED WITH PREJUDICE**.

**FACTUAL BACKGROUND**

**A.    Procedural History**

On January 29, 2024, Plaintiff filed a complaint in the New Jersey Superior Court setting forth claims, pursuant to 42 U.S.C. § 1983, against Defendants Matthew Schullery, Fathom Borg, Stephanie Bailey, Susan Garrett, Tiffany Fairweather, Kyle Yaindl, Linda Linen, State of New Jersey Department of Corrections ("NJDOC"), and John/Jane Does 1-20, arising out of events during Plaintiff's state incarceration. *See* ECF No. 1-1 (Compl.). Defendant Fathom Borg—the only Defendant served—removed this case to federal court pursuant to 28 U.S.C. § 1331. *See* ECF No. 1 (Notice of Removal) ¶¶ 4, 6.

On May 2, 2024, after Defendant Borg moved to dismiss, ECF No. 6 (Borg Motion), Plaintiff filed an amended complaint against Defendants Matthew Schullery, Fathom Borg, Stephanie Bailey, Susan Garrett, Tiffany Fairweather, Kyle Yaindl, and Linda Linen, ECF No. 9 (Am. Compl.). Borg withdrew her motion to dismiss the complaint, ECF No. 12 (Order), and filed a motion to dismiss the amended complaint, ECF No. 13 (Borg Second Mot. to Dismiss).

On June 21, 2024, Plaintiff filed a second amended complaint against the same Defendants. ECF No. 18 (Second Am. Compl.). Nothing on the docket reflects Plaintiff's service of the second amended complaint on any of the previously-unserved Defendants. *See generally* Dkt. Borg's pending motion to dismiss the amended complaint was dismissed as moot, ECF No. 21 (Order), and on July 26, 2024, Borg filed a motion to dismiss the second amended complaint, ECF No. 24 (Borg Third Mot. to Dismiss). The Court granted that motion and dismissed all claims against Borg without prejudice. ECF No. 28 (Mem. Order).

On September 27, 2024, Plaintiff filed a motion for leave to file a third amended complaint. ECF No. 30 (Pl.'s First Mot. to Amend). Borg opposed the motion on October 21, 2024, ECF No. 33 (Borg First Opp.), and Plaintiff filed a reply on October 24, 2024, ECF No. 34 (Pl.'s First Reply). On April 23, 2025, the Court denied Plaintiff's motion without prejudice, finding that granting leave to amend would be futile. ECF Nos. 36 (Mem.), 37 (Order).

On June 13, 2025, Plaintiff filed the present second Motion for Leave to File a Third Amended Complaint. ECF No. 39 ("Pl.'s Mot."). No Defendant has filed opposition. *See generally* Dkt.

B.   **Facts Alleged in the Proposed Third Amended Complaint**

According to the proposed Third Amended Complaint ("Proposed TAC"), ECF No. 39-3, on February 4, 2022, Plaintiff was a resident of South Woods State Prison in Cumberland County,

2

New Jersey, where he was housed in general population. Proposed TAC ¶¶ 10-11. On February 7, 2022, he was transferred to the Restricted Housing Unit ("RHU") in South Woods State Prison, where he remained for approximately two months. *Id.* ¶¶ 12-13. During his stay in the RHU, Plaintiff was subjected to "extreme freezing cold temperatures 24 hours a day" and "was not issued protective gear." *Id.* ¶¶ 14-15. According to the Proposed TAC, Plaintiff provided notice of these conditions to Matthew Schullery, an NJDOC employee, but Schullery allegedly ignored Plaintiff's complaint. *Id.* ¶¶ 2, 16-17.

Plaintiff alleges that, prior to his stay in South Woods State Prison, he was a resident of Northern State Prison ("NSP") in Newark, New Jersey. *Id.* ¶ 18. Prior to February 2, 2022, Plaintiff "engaged in a dispute with the administration of Northern State Prison." *Id.* ¶ 19. This dispute began sometime around August 26, 2021, when Plaintiff was transferred from NSP's general population to the RHU for an alleged prison infraction. *Id.* ¶¶ 20-21. Plaintiff complained that the administration failed to transfer his property—including a television, fan, storage bin, food, and other things—with him to the RHU.[1] *Id.* ¶ 22. In late December 2021, prison employee Lieutenant Hassan told Plaintiff that a "committee" would be meeting in January to decide his missing property claim. *Id.* ¶ 24. On January 19, 2022, Plaintiff received the committee's written, adverse decision on that claim, signed by a business manager and the administrator, Patricia McGill. *Id.* ¶ 25. Plaintiff disagreed with the committee's decision and believed that many of their reasons were "blatant lies." *Id.* ¶¶ 26-27.

Subsequently, Plaintiff spoke with Lieutenant Hassan about the committee's decision, at which time Hassan told him there was no appeal and nothing further she could do. *Id.* ¶¶ 28-29.

---

[1] The Proposed TAC is not clear as to what type of grievance Plaintiff filed with NSP's administration concerning his missing property. *See generally* Proposed TAC.

3

Plaintiff felt highly aggrieved and filed another "grievance" against the NSP administration, which was "met with an unsympathetic response." *Id.* ¶¶ 30-32.

On February 2, 2022, Plaintiff had "an encounter" with Defendant Fathom Borg, an assistant commissioner of the NJDOC. *Id.* ¶¶ 3, 33. According to Plaintiff, Defendant Borg "appeared at Plaintiff's cell door" to speak to him and directed him "not to drop threatening messages on the JPAY."[2] *Id.* ¶¶ 34-36. Plaintiff contested Borg's characterization of his JPay messages and stated that he was simply advocating his position on the committee's unfair treatment of his missing property claim. *Id.* ¶¶ 38-39. After Plaintiff explained the basis for his belief that the committee's decision was wrong, Borg purportedly told Plaintiff that "if he had put his claim in the right way, she would have approved the return of his missing property." *Id.* ¶¶ 40-41. Borg also allegedly told Plaintiff that he had put his claim in too late. *Id.* ¶ 43. According to the Proposed TAC, when Plaintiff disputed Borg's statements, "Borg's demeanor changed to one of anger," and she walked away from Plaintiff's cell. *Id.* ¶¶ 42, 44–47. As Borg walked away, Plaintiff alleges that he "spoke certain profane words" to her and "cursed her out" in frustration about the committee's denial of his missing property claim. *Id.* ¶¶ 49-51. According to the Proposed TAC, a disciplinary charge was directed at him for threatening Borg. *Id.* ¶ 56.

On February 3, 2022, the NJDOC transferred Plaintiff to South Woods State Prison in Bridgeton, New Jersey. *Id.* ¶ 57. Upon his arrival, Plaintiff was housed in the RHU. *Id.* ¶ 58. On February 4, 2022, the jail held a disciplinary hearing on the charge that Plaintiff threatened Borg, with Plaintiff *in absentia*. *Id.* ¶ 59. The hearing officer found Plaintiff innocent of the charge of threatening Borg but guilty of using abusive language towards her. *Id.* ¶¶ 60-61. The hearing

---

[2] "JPay is a self-help kiosk system where incarcerated individuals can access their funds, download digital books, programming, music, access stamps, send and receive electronic correspondence . . . ." https://www.nj.gov/corrections/pages/StayingConnected.html, available at https://perma.cc/K5JA-YND7 (last visited Nov. 21, 2025).

officer then imposed a penalty of thirty days Loss of Recreational Privileges ("LORP"). *Id.* ¶ 62. Plaintiff contends that because the only penalty the hearing officer imposed on him was the LORP, and not additional time in the RHU, prison administrators had no basis to continue to hold him in the RHU. *Id.* ¶¶ 63-65.

On February 4, 2022, Plaintiff was transferred from the RHU to general population in South Woods State Prison, where he was housed until February 7, 2022. *Id.* ¶¶ 66-67. On February 7, 2022, Plaintiff alleges that Borg learned that Plaintiff was in general population instead of the RHU. *Id.* ¶ 68. Plaintiff claims that Borg then ordered Plaintiff transferred from general population to the RHU. *Id.* ¶¶ 69-70. Plaintiff remained housed in the RHU for approximately two months. *Id.* ¶ 72. While housed in the RHU, Plaintiff alleges he spent approximately one month in isolation. *Id.* ¶¶ 73, 101. Plaintiff avers that his transfer to the RHU on February 7, 2022, constituted retaliation for his spoken words to Defendant Borg on February 2, 2022. *Id.* ¶¶ 74-77.

Plaintiff further asserts that Defendant Borg was aware of the "harsh, more restrictive and more primitive conditions in the RHU . . . , compared to the conditions in general population." *Id.* ¶ 78. Unlike in general population, inmates in the RHU received their daily out-of-cell recreation in a big steel cage; were limited to showers every other day; were shackled whenever they left their cells; received meals and medication through a slot in the cell door; had a small sliver of glass for windows; were restricted to fifteen minutes of phone time per day; were not provided with books; were allowed $40 worth of commissary access each month; were not allowed law library access; had to deal with frequently out-of-order JPay kiosks; endured extreme freezing temperatures; and were not issued warmer clothing or blankets. *Id.* ¶¶ 79-90.

Plaintiff claims to have "suffered from all of these deprivations and hardships for the duration of his time in the RHU." *Id.* ¶ 91. Plaintiff specifically contends that until his overnight

5

bag arrived one week after his placement in the RHU, he had to stay under the covers "24/7" due to the cold, and even after his bag arrived, he slept in sweatpants and a sweatshirt with two blankets every night. *Id.* ¶¶ 92-93. As a result, Plaintiff alleges that he suffered from sleep deprivation. *Id.* ¶ 94. Moreover, while in the RHU, Plaintiff's JPay privileges were suspended without cause, leaving Plaintiff with nothing to do on his tablet but play Sudoku. *Id.* ¶ 95. Plaintiff claims that he could not email with his family. *Id.* According to the Proposed TAC, Plaintiff's privileges were restored about a month into his time in RHU, but at that point, the one functioning kiosk in the RHU froze, and except for a few intermittent days, Plaintiff could not access his JPay to engage in outside communication. *Id.* ¶ 96.

Plaintiff further alleges that beginning on March 13, 2022, he was placed in a two-man cell in solitary confinement, despite that, as a documented "Special Needs Inmate," he suffered from mental health problems and suicidal tendencies. *Id.* ¶¶ 97-99. Although his "Special Needs" designation precluded him from being confined alone in a cell, he remained in solitary confinement for one month during his nine-week stay in the RHU, thus exacerbating his stress and depression. *Id.* ¶¶ 100-02.

The Proposed TAC asserts that Defendant Stephanie Bailey, an NJDOC employee, became aware of these circumstances based on Plaintiff's report to her, but she nonetheless ignored his complaints. *Id.* ¶¶ 4, 104-05. Likewise, Defendants Susan Garrett, Tiffany Fairweather, Kyle Yaindl, and Linda Linen—all NJDOC employees—were each apprised of Plaintiff's circumstances but ignored them. *Id.* ¶¶ 5-8, 106-13. Plaintiff claims that "[a]s a direct and proximate result of the conduct of the Defendants, Matthew Schullery, Fathom Borg, Stephanie Bailey, Susan Garrett, Tiffany Fairweather, Kyle Yaindl, and Linda Linen," Plaintiff suffered various injuries. *Id.* ¶ 114.

The Proposed TAC pleads the following causes of action: Count I – cruel and unusual punishment under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act against Matthew Schullery, *id.* ¶¶ 115-18; Count II (deleted); Count III – cruel and unusual punishment in violation of 42 U.S.C. § 1983 and the New Jersey Civil Rights Act against Fathom Borg, *id.* ¶¶ 121-22; Count IV – cruel and unusual punishment in violation of 42 U.S.C. § 1983 and the New Jersey Civil Rights Act against Defendants Stephanie Bailey, Susan Garrett, Tiffany Fairweather, Kyle Yaindl, and Linda Linen, *id.* ¶¶ 123-24; and Count V – denial of substantive and procedural due process under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act against Fathom Borg, *id.* ¶¶ 125-31.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) governs amendments to pleadings before trial. A party may amend its pleading once as a matter of course within either twenty-one days after serving it; or if the pleading is one to which a responsive pleading is required, the earlier of twenty-one days after service of a responsive pleading or twenty-one days after a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). If those deadlines have expired, a party may amend its pleading only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*.

The Third Circuit has adopted a liberal approach to the amendment of pleadings. *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019); *see also Donovan v. W. R. Berkley Corp.*, 566 F. Supp. 3d 224, 229 (D.N.J. 2021) ("Generally, there is a presumption in allowing the moving party to amend its pleadings."). However, the Court may deny a motion for leave to amend in one of four instances: (1) the amendment would be futile; (2) the moving party has demonstrated undue delay, bad faith, or dilatory motives; (3) the amendment would

prejudice the non-moving party; or (4) the moving party was put on notice of deficiencies in its pleading but chose not to resolve them. *U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). Ultimately, the decision of whether to grant leave to amend lies within the sound discretion of the Court. *Arab Afr. Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993).

Here, the Court previously denied Plaintiff leave to file an amended complaint on grounds of futility. "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Accordingly, the futility of an amended complaint is governed by the same standards of legal sufficiency as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010). Under these standards, a court must accept all factual allegations in a proposed amended complaint as true and view them in the light most favorable to the plaintiff. *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Moreover, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## DISCUSSION

In his Second Amended Complaint, Plaintiff asserted claims against Defendant Borg for First Amendment retaliation and a violation of the Eighth Amendment prohibition against cruel

and unusual punishment. ECF No. 18 (Second Am. Compl.) ¶¶ 93-103. The Eighth Amendment claim specifically alleged that Defendant Borg's detention of Plaintiff in the RHU constituted cruel and unusual punishment. *Id.* ¶¶ 102-03. After those claims were dismissed, Plaintiff filed the current Proposed TAC, which reasserts the Eighth Amendment claim against all Defendants[3] and adds a claim for denial of substantive and procedural due process under the Fourteenth Amendment and the New Jersey Civil Rights Act against Defendant Borg. The Court addresses each of these claims separately.

### A. Eighth Amendment Claim for Cruel and Unusual Punishment (Conditions of Confinement)

On September 9, 2024, the Court dismissed all claims against Defendant Borg—including the Eighth Amendment claim—without prejudice.[4] ECF No. 28 (Sept. 9, 2024 Mem. Order). Plaintiff subsequently moved for leave to amend his Complaint, attempting to replead his Eighth Amendment claim against Defendant Borg by supplementing it with additional allegations. *See* ECF No. 30-3 (First Proposed Third Am. Compl.). His First Proposed Third Amended Complaint ("First Proposed TAC") asserted that Plaintiff's two-month stay in the RHU constituted cruel and unusual punishment because RHU inmates were subjected to additional restrictions, including limited out-of-cell recreation in a steel cage; showers only every other day; shackling whenever inmates left their cells; meals and medication provided through a slot in the cell door; slivers of

---

[3] In his Proposed TAC, Plaintiff has withdrawn his First Amendment retaliation claim, which was formerly Count II of the Second Amended Complaint.

[4] As noted above, Plaintiff has failed to serve any Defendant, other than Fathom Borg, with any version of the Complaint. *See* ECF No. 1 (Notice of Removal) ¶¶ 5-6. Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Given that no service of process has been made on Defendants Matthew Schullery, Stephanie Bailey, Susan Garrett, Tiffany Fairweather, Kyle Yaindl, and Linda Linen, the Court addresses Plaintiff's Motion only as to Defendant Borg.

glass for windows; a fifteen-minute limitation on daily phone time; no books; only $40 worth of monthly commissary access; freezing cold conditions; no working JPay kiosks; and no law library access. *Id.* ¶¶ 70-83. The First Proposed TAC further argued that Borg, who was familiar with the conditions in the RHU, gave the order for Plaintiff to be transferred to the RHU without penological basis and was motivated by retaliation. *Id.* ¶¶ 69, 84, 89-90.

The Court denied the requested leave to amend on the grounds that Plaintiff had failed to adequately plead an Eighth Amendment deliberate indifference claim. ECF No. 36 (Mem. Op.) at 8-14. Specifically, the Court found, in pertinent part:

> The conditions alleged by Plaintiff in his Proposed TAC do not rise to the level of a constitutional violation. To the extent Plaintiff generally challenges his incarceration in the RHU, it is well established an inmate's incarceration in solitary confinement or restrictive housing does not, in and of itself, violate the Eighth Amendment "where his basic needs for nutrition and shelter were being met." *Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) (citing *Gibson v. Lynch*, 652 F.2d 348, 350, 352 (3d Cir. 1981)); *see also Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (finding that plaintiff's "prolonged administrative segregation," without a deprivation of life's necessities, did not violate the Eighth Amendment); *Talbert v. Shapiro*, No. 23-2262, 2023 WL 4564778, at *6 (E.D. Pa. July 14, 2023) ("Detention in a restrictive housing unit, without more, generally is insufficient to establish an Eighth Amendment violation." (cleaned up)).
>
> To the extent Plaintiff challenges specific conditions of confinement within the RHU, none of them rise to the level of an Eighth Amendment violation:
>
> - Plaintiff's allegations that he was fed meals and medication through a slot in the door does not allege a deprivation of the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. Whether the deprivation of food violat[es] constitutional protections "depends on the amount and duration of the deprivation." *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) (quotation omitted). "While a total deprivation of meals raises an Eighth Amendment claim," *Glenn v. McLain*, No. 23-209, 2024 WL 4350272, at *10 (W.D. Pa. Sept. 30, 2024), Plaintiff admits that he

10

received meals, albeit in his cell.

- As to Plaintiff's claims of infrequent showers in restrictive custody, the Eighth Amendment does not require that prisoners be afforded frequent or comfortable showers. *DiFilippo v. Vaughn*, No. 95-909, 1996 WL 355336, at *5 (E.D. Pa. June 24, 1996); *see also Devon v. Warden SCI-Mahanoy*, No. 08-1448, 2008 WL 3890161, at *4 (M.D. Pa. Aug. 19, 2008) (holding that thirteen and a half days without shower, shave, or recreation did not violate the Eighth Amendment).

- As to Plaintiff's claim that he was given out-of-cell recreation only in a steel cage, instead of the general yard, courts have found that although the near-total deprivation of the opportunity to exercise may violate the Eighth Amendment, temporary denial of out-of-cell exercise does not violate the Constitution. *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (deprivation of out-of-cell exercise for twenty-eight days was not a deprivation). Courts should consider "the length of the deprivation, the availability of recreation within the cell, and whether the inmate suffered any ill health effects as a result of the deprivation." *Id.* (citations omitted). Here, Plaintiff admits that he was given out-of-cell recreation, albeit in a steel cage. This condition does not violate the Eighth Amendment.

- With respect to his claim of limited phone access, "prisoners 'ha[ve] no right to unlimited telephone use,' and reasonable restrictions on telephone privileges do not violate their [constitutional] rights." *Almahdi v. Ashcroft*, 310 F. App'x 519, [522] (3d Cir. 2009) (quotations omitted).

- As to any deprivation of access to the law library, a claim that prison officials have denied an inmate access to the law library does not constitute an Eighth Amendment claim, but rather a First or Fourteenth Amendment access to courts claim. *Frazier v. Daniels*, 2010 WL 2040763, at *12 & n.12 (E.D. Pa. May 20, 2010) (citations omitted). Moreover, any claim based on denial of access to a prison law library must be accompanied by "some actual injury." *Id.* Plaintiff has alleged no such injury.

- Plaintiff's claim that he was shackled whenever out of [his] cell while in the RHU also does not violate the Eighth Amendment. *See Conklin v. Doe*, No. 24-189, 2024 WL

11

> 4544776, at *3-4 (M.D. Pa. Oct. 22, 2024) (finding that policy of keeping RHU inmates restrained is not a *per se* constitutional violation); *Platt v. Brockenborough*, 476 F. Supp. 2d 467, 471 (E.D. Pa. 2007) (noting that the use of shackles *per se* does not violate the Eighth Amendment).
>
> - With respect to the allegedly cold conditions in the RHU, the Third Circuit has held, in several unpublished opinions, that an inmate's exposure to cold conditions does not, absent more, violate the Eighth Amendment. *See Burkholder v. Newton*, 116 F. App'x 358, 363 (3d Cir. 2004) (denying a conditions of confinement claim based on exposure to cold temperatures and an unsanitary toilet for thirty days); *Bracey v. Sec'y Pa. Dep't of Corrs.*, 686 F. App'x 130, 136 (3d Cir. 2017) (holding that allegedly cold conditions in cell did not violate the Eighth Amendment, absent showing that conditions were extreme).
>
> - Finally, as to Plaintiff's claim that he was not provided with books, was allowed only $40 worth of monthly commissary access, did not have working JPay kiosks, and had only a sliver of glass for a window, "[t]he loss of such minor privileges simply does not rise to the level of a sufficiently serious deprivation of life's necessities." *Bacon v. Luzerne Cnty.*, No. 23-1699, 2024 WL 1837217, at *4 (M.D. Pa. 2024) (citing *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (no Eighth Amendment violation where plaintiff's confinement in administrative custody did not involve "a deprivation of any basic human need.")).
>
> Indeed, courts considering similar allegations collectively have declined to find an Eighth Amendment violation. *See, e.g.*, *Glenn v. McLain*, No. 23-209, 2024 WL 4350272, at *10 (W.D. Pa. Sept. 30, 2024) (denying Eighth Amendment claim based on conditions in RHU, including temporary loss of outdoor exercise time, temporary denial of a mattress, temporary denial of a shower, restricted meal items, and lack of access to personal property); *Smith v. McGinley*, No. 22-1382, 2024 WL 2725041, at *6 (M.D. Pa. May 28, 2024) (finding placement in RHU resulting in inability to use the telephone, denial of mailing envelopes, temporary placement in a cell with no hot water for three days, inability to use cleaning products, and inability to purchase items from the commissary did not violate Eighth Amendment).

*Id.* at 11-13.

The Court also denied Plaintiff leave to plead an Eighth Amendment claim against Defendant Borg on the grounds that he failed to satisfy the "actual knowledge" element of an Eighth Amendment claim. Specifically, the Court stated:

> The second, actual knowledge requirement of an Eighth Amendment claim means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. A prison official, however, cannot avoid liability by ignoring "obvious dangers to inmates." *Id.* at 842. Rather, "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. Stated differently, "[d]eliberate indifference is effectively alleged where an inmate shows officials knew of, but disregarded, that the prison conditions posed 'an excessive risk to inmate health and safety.'" *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022) (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001)).
>
> Here, the Proposed TAC simply alleges that Defendant Borg was familiar with conditions in the RHU; yet, based on retaliatory motives, she gave the order for Plaintiff to be transferred from general population to the RHU at South Woods State Prison. Proposed TAC ¶¶ 69, 84, 90. Nothing in the Proposed TAC, however, allows the inference that Borg knew that Plaintiff faced a substantial risk of serious harm while in the RHU. Nor does the Proposed TAC suggest that Plaintiff faced any actual excessive risk to his safety. Such bare-boned allegations are insufficient to establish the second element of an Eighth Amendment claim.

*Id.* at 13-15 (footnote omitted).

Plaintiff's most current iteration of these claims in the Proposed TAC fails to remedy any of the previously-identified deficiencies. As a primary matter, Plaintiff sets forth the same conditions of confinement which, considered collectively, have previously been found not to rise to the level of cruel and unusual punishment. *See* ECF No. 39-3 (Proposed TAC) ¶¶ 79-102.

Moreover, while Plaintiff adds allegations that, during his ninety-day stay in the RHU, he was kept in solitary confinement for a one-month period despite a "Special Needs Inmate" designation, *id.* ¶¶ 97-100, such allegations do not resuscitate his Eighth Amendment claim. "In

the context of prisoners with mental illnesses, the Third Circuit has held that 'officials' deliberate indifference towards placing inmates with known mental illnesses in conditions of extreme isolation for extended periods of time' constitutes sufficient deprivation" for an Eighth Amendment claim. *Nelson v. Wetzel*, No. 23-1030, 2025 WL 2884817, at *6 (M.D. Pa. Oct. 9, 2025) (quoting *Clarke v. Coupe*, 55 F.4th 167, 180 (3d Cir. 2022)); *see also Williams v. Sec'y Pa. Dep't of Corrs.*, 117 F.4th 503, 524 (3d Cir. 2024) (recognizing the right of a prisoner known to be seriously mentally ill not to be placed in solitary confinement for an extended or indefinite period of time). However, a mentally ill prisoner's placement in solitary confinement, standing alone, does not violate the Constitution, as such confinement is recognized as a potentially necessary tool of discipline. *Nelson*, 2025 WL 2884817, at *6 (citations omitted). Thus, to "fit[] the classification of persons that courts have found have been sufficiently deprived for Eighth Amendment purposes; the [prisoner] must have had a serious mental illness and a vulnerability to suicide, and have been placed in solitary confinement for an extended period of time." *Id.* While no bright line exists for when the duration of solitary confinement contravenes the Eighth Amendment, *Johnson v. Wetzel*, 431 F. Supp. 3d 666, 679 (W.D. Pa. 2019), courts in this Circuit have repeatedly found that periods of weeks do not amount to an extended period of time. *See, e.g.*, *Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) (holding that 112-day stay in RHU did not state a claim for violation of Eighth Amendment rights); *Laird v. Terra*, No. 23-3429, 2024 WL 388376, at *2, *9 (E.D. Pa. Jan. 31, 2024) (finding that plaintiff's 229-day stint in solitary confinement—resulting in his stress, anxiety and depression—was alone insufficient for an Eighth Amendment claim where he did not plead that state actors deprived him of food, sanitation, or clothing); *Reaves v. Rossman*, No. 21-1282, 2022 WL 18539772, at *5 (M.D. Pa. July 1, 2022) (finding that eleven-month confinement in solitary confinement with allegation of "unspecified

14

serious mental illness" was insufficient to state plausible Eighth Amendment claim); *Stanford v. Walton*, No. 16-1584, 2019 WL 5068666, at *12-13 (W.D. Pa. Oct. 9, 2019) (finding no viable Eighth Amendment claim where plaintiff with alleged "ongoing mental health problems" was held in solitary confinement for approximately four weeks). Against this legal backdrop, Plaintiff's allegation that he had an unspecified mental illness exacerbated by a one-month stay in solitary confinement fails to state a plausible claim for relief.

In addition, despite Plaintiff's efforts in the Proposed TAC to allege examples of an "atypical and significant hardship" within the prison setting, Plaintiff has failed to adequately plead such a hardship. *Id.* Finally, Plaintiff has added no allegations to allow for the inference that Defendant Borg knew that Plaintiff faced any excessive risk to his safety or risk of serious harm while in the RHU. Rather, the proposed TAC sets forth only the bare-boned allegation that "Defendant FATHOM BORG, was aware of the harsh, more restrictive and more primitive conditions in the RHU at SWSP, compared to the conditions in general population." *Id.* ¶ 78. Accordingly, leave to amend to add these Eighth Amendment claims must again be denied as futile.

**B.     Due Process Claim**

Plaintiff's proposed TAC also raises a claim against Defendant Borg for denial of substantive and procedural due process under the Fourteenth Amendment and the New Jersey Civil Rights Act. Specifically, the Proposed TAC alleges the following:

> 125.   The law recognizes that the first step in assessing a due process claim is whether there is a protected liberty interest or property interest within the meaning of the Fourteenth Amendment.
>
> 126.   The law recognizes that the transfer of a prison inmate to segregated custody from general prison population can implicate a protected liberty interest when the segregated custody imposes an

15

    atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

    127. The segregated custody away from general prison population afforded Plaintiff, VAN HUNTER, imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life.

    128. The law further recognizes, with regard to substantive due process claims, that to be actionable, the prison official's conduct must be so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.

    129. The conduct of Defendant, FATHOM BORG, was so sufficiently conscience shocking so as to deprive Plaintiff of a substantive due process right protected under the Fourteenth Amendment and N.J. Cons. Art. I ¶ 1.

    130. The law further recognizes, with regard to procedural due process claims, that the minimum process due was notice of the factual basis for the transfer decision and a fair opportunity for rebuttal of that decision, in this case an informal hearing.

    131. By being deprived of the minimum process due, i.e. notice of the factual basis of the transfer decision and an informal hearing, by Defendant, FATHOM BORG, Plaintiff VAN HUNTER was deprived of a procedural due process right protected under the Fourteenth Amendment.

Proposed TAC ¶¶ 125-31.

    In analyzing a due process claim, "the threshold question is whether the complaining party has been deprived of a protected liberty or property interest." *Thomas v. Rosemeyer*, 199 F. App'x 195, 197 (3d Cir. 2006) (citing *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000)). "It is well-settled that placement in administrative confinement will generally not create a liberty interest." *Williams*, 566 F. App'x at 108; *see also Riley v. Carroll*, 200 F. App'x 157, 158 (3d Cir. 2006) ("Because administrative segregation is the sort of confinement that [plaintiff] should reasonably anticipate receiving at some point in his incarceration, his transfer to less amenable and more restrictive quarters does not implicate a liberty interest protected by the Due Process Clause.")

16

(citing *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002). Rather, "[i]n a prison context, due process protection is limited to those situations where the deprivation rises to the level of an 'atypical and significant hardship on inmate in relation to the ordinary incidents of prison life.'" *Thomas*, 199 F. App'x at 197 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "Such a hardship exists if the circumstances of a prisoner's confinement fall[] outside of the expected parameters of comparable confinement." *Williams*, 566 F. App'x at 108. The United States Court of Appeals for the Third Circuit has found that confinement in restrictive housing for periods from 120 days up to 15 months was not an "atypical or significant hardship." *Id.* at 108 (120 days); *Thomas*, 199 F. App'x at 197-98 (270 days); *Smith v. Mensinger*, 293 F.3d 641, 645, 654 (3d Cir. 2002) (7 months); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (15 months).

Here, Plaintiff alleges a due process violation based on an approximate nine-week stay in the RHU. The conditions of which he complains reflect typical restrictions in administrative custody. Moreover, as discussed in detail above, the conditions, while perhaps unpleasant, did not present any atypical or significant hardship on Plaintiff in relation to the ordinary incidents of prison life. In light of Plaintiff's failure to establish a protected liberty interest, his efforts to plead to a due process claim are futile.

## CONCLUSION

For the foregoing reasons, and taking all allegations in the light most favorable to Plaintiff, Plaintiff's Proposed TAC against Defendant Borg fails to allege a plausible Eighth Amendment or a due process claim under the Fourteenth Amendment or the New Jersey Civil Rights Act. As such, permitting the requested amendment would be futile. Accordingly, Plaintiff's Motion for Leave to Amend is **DENIED WITH PREJUDICE**.

                                                                s/Elizabeth A. Pascal
                                                                ELIZABETH A. PASCAL
                                                                United States Magistrate Judge

cc: Karen M. Williams, U.S.D.J.